**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSEPH M. KEHOE, <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL ASSOCIATION OF THEATRICAL STATE EMPLOYEES LOCAL 21, INTERNATIONAL ASSOCIATION OF THEATRICAL STAGE EMPLOYEES, MATTHEW LOEB, MICHAEL STAS, JOHN SEUBERT, STANLEY GUTOWSKI, SANFORD OXFELD, PULSE LIGHTING, ROBERT SUCHOCHI, <br><br> Defendants. | Civil Action No.: 13-7805 (JLL) (JBC) <br><br> **OPINION** |

**LINARES**, District Judge.

This action arises out of a sequence of events that took place while Pro-Se Plaintiff Joseph M. Kehoe ("Kehoe") was a member of the International Association of Theatrical Stage Employees Local 21 ("Local 21"), which ultimately led to Kehoe's removal from Local 21, and for which Kehoe seeks relief under the Labor-Management Reporting and Disclosure Act. Presently before the Court are motions for summary judgment filed by Defendants Local 21, Michael Stas (President of Local 21), Stanley Gutowski (Local 21 Business Manager), and John Seubert (Local 21 Secretary) (collectively the "Local 21 Defendants") (ECF No. 103), and by Defendant Sanford Oxfeld, Esq. (Attorney for Local 21) ("Oxfeld") (ECF No. 104) pursuant to Federal Rule of Civil Procedure 56.[1]   The Court has considered the parties' submissions and

---

[1] The Court collectively refers to the Local 21 Defendants and Oxfeld as "Defendants."

decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.  For the reasons set forth below, the Court grants Defendants' Motions for Summary Judgment.

## FACTUAL BACKGROUND[2]

Local 21 is a local union of International Association of Theatrical Stage Employees ("I.A.T.S.E. International").  (ECF No. 59-2 ("Am. Compl." or "AC") ¶ 4, 5.)  Kehoe became a member of Local 21 beginning on January 1, 2011, after his previous union, Local 534, merged with Local 21.  (L21 SMF ¶ 1.)  The Constitution and By-Laws for Local 21 contain specific provisions relating to discipline of members and appeals.  (*See* P-39.)

### A.  September 2012 Pfeifer Incident

On September 28, 2012, Kehoe worked with Kevin Pfeifer at First Energy Park in Lakewood, New Jersey.  (L21 SMF ¶ 2.)  Kehoe believed that he saw Mr. Pfeifer operate his forklift improperly.  (*Id.* ¶ 3.)  Kehoe took pictures of alleged damage caused by Mr. Pfeifer.  (*Id.* ¶ 4.)  Mr. Pfeifer allegedly tried to attack Kehoe.  (*Id.* ¶ 5.)  Kehoe posted the pictures to his personal Facebook page.  (*Id.* ¶ 4.)  The parties dispute whether Kehoe included "critical captions" along with the photos.  (*Compare* L21 SMF ¶ 4, *with* Pl. R. SMF ¶ 4.)  However, in his deposition,

---

[2] These background facts are taken from the record evidence, and, where possible, the parties' statements of material facts pursuant to Local Civil Rule 56.1.  (ECF No. 103-4, Local 21 et al. Statement of Uncontested Material Facts ("L21 SMF"); ECF No. 114, Plaintiff's Response to Local 21 et al. Statement of Uncontested Material Facts ("Pl. R. SMF"); ECF No. 117-2, Local 21 et al. Responsive Statement ("L21 R. SMF"); ECF No. 111, Plaintiff's Statement of Disputed Material Facts ("Pl. SDMF"); ECF No. 117-3, Local 21 et al. Response ("L21 R. SDMF"); ECF No. 104 at 2-5, Oxfeld Statement of Facts ("Oxfeld SMF"); ECF No. 116, Plaintiff's Response to Oxfeld Statement of Facts ("Pl. R. Oxfeld SMF"); ECF No. 115 at 1-2, ("Oxfeld R. SMF"); ECF No. Pl. 113-2, Plaintiff Statement of Disputed Facts RE: Oxfeld ("Pl. Oxfeld SDMF"); ECF No. 120 ("Oxfeld R. SDMF")).  The Court will "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of facts." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, 2005 U.S. Dist. LEXIS 27820, at *10 (D.N.J. Nov. 10, 2005); *see also* L. Civ. R. 56.1 ("Each statement of material facts . . . shall not contain legal argument or conclusions of law.").

Kehoe stated he "can't recall" if he posted comments, but admitted it was "certainly possible," and that they were potentially "along the lines of Kevin Pfeifer's latest accidents or disasters." (*See* Mar. 31 Tr. at 209:25 to 210:23.)

Kehoe and Mr. Pfeifer filed charges against one another with Local 21. (L21 SMF ¶ 6; *see* JK-17 and JK-18.) Mr. Pfeifer alleged that Kehoe's conduct on September 28, 2012 constituted harassment and conduct unbecoming of a member. (JK-17.) On January 18, 2013, Local 21 Attorney Sanford Oxfeld[3] sent a letter to Kehoe and Mr. Pfeifer. (JK-2.) In the letter Mr. Oxfeld, in part: advised that he was "the attorney for IATSE Local 21"; instructed the parties to cite the relevant section of the by-laws under which their charges had been filed and to identify their anticipated list of witnesses; advised that there was a penalty for "preferring false charges" and also that the costs of the hearing would be borne equally by the parties. (*Id.*)

On January 18, 2013, Kehoe responded to Mr. Oxfeld's letter and raised several issues: first, that he was waiting for a list of all members who were on the job site on September 18, 2012; second, that his charges against Mr. Pfeifer for gross negligence and misconduct arose under Article 12, Section 1 of the Constitution and by-laws; third, that the fine for preferring false charges was $25 (rather than $250 as Mr. Oxfeld's letter had indicated); and finally, that he refused to bear his share of the costs of the hearing. (JK-3.) On January 29, 2013, in response to Kehoe's request for a list of the members on the job site, Local 21 Secretary John Seubert stated via email that he had "been advised by the Local's attorney not to release any information as it shows preferential treatment." (P-3.) Via letter dated February 8, 2013 to Oxfeld, Kehoe advised that he had "received the list" of members working on the job site, and identified three witnesses for the

---

[3] Oxfeld has been the attorney for Local 21 for approximately 25 years and he states that his "role and duty relates solely to [Local 21] and not individual members." (ECF No. 104-4, Oxfeld Cert. ¶¶ 1, 2.)

hearing.  (JK-4.)  Further, Kehoe reiterated his right to file the charges and stated that he was feeling "pressured" to drop the charges.  (*Id.*)

A joint disciplinary hearing was held before Local 21 on February 25, 2013.  (*See* JK-5.) Local 21 President Mike Stas, Local 21 Vice President Don Aurnhammer, Local 21 Treasurer Brian Donnelly, Local 21 Business Manager Stan Gutowski, Local 21 Secretary John Seubert, Local 21 Trial Board members Erik Molitor, Jay Lynn, Bill Worman, Vincent Meli, Craig Merner and Local 21 Attorney Sanford Oxfeld were all present at the disciplinary hearing.  (*Id.*)  The parties dispute the appropriateness of Mr. Oxfeld's presence at the hearing.  (*Compare* Oxfeld SMF ¶ 15, *with* Pl. R. Oxfeld SMF ¶ 15.)

Both Kehoe and Mr. Pfeifer presented evidence at the hearing, and Kehoe was not restricted in the evidence that he presented.  (L21 SMF ¶¶ 9, 10.)  Kehoe's time limit was five to seven minutes for his opening statement:

> MR. STAS: . . . We are going to try to limit the time [of opening statements] to something reasonable, like five, seven minutes.
> MR. KEHOE: I only have a couple pages.  I don't have a book here.

(JK-5 at 4:19-23.)  Kehoe never objected to this time limitation, nor was he cut off during his opening, and he acknowledged that this time limitation was of no consequence to his opening. (L21 SMF ¶¶ 21-23.)  Kehoe was given five minutes for his rebuttal statement after hearing Mr. Pfeifer's charge:

> MR. OXFELD: Mr. Kehoe, having heard Mr. Pfeifer's charge, do you plead guilty or not guilty?
> MR. KEHOE: Not guilty and I have a statement to that effect. . . .
> MR. OXFELD: Mr. Kehoe, you said you had a statement to that effect?
> MR. KEHOE: Yes.
> MR. OXFELD: Let it be under five minutes.
> MR. KEHOE: Yes.

4

(JK-5 at 13:13 to 14:2.)  Kehoe acknowledged that he was able to read his entire rebuttal statement

without being cut off.  (L21 SMF ¶¶ 24, 25.)  In his rebuttal, Kehoe argued that the charges against

him were time-barred and requested the trial board to summarily dismiss the charges.  (*See* JK-5

at 14:8 to 16:5.)  Mr. Oxfeld refused to permit a summary decision:

> MR. OXFELD: Mr. Kehoe, I'm not going to allow the board to
> make a decision summarily.  Your position [regarding the statute of
> limitations] is noted and will be addressed in the decision issued by
> the board and may be sustained or not sustained.  I will say this for
> the record, if you want to defend the charges, feel free to do so.  You
> will not be deemed to have waived your position that Mr. Pfeifer's
> charges are out of time.  To be clear, if you participate in defending
> charges, that will not be held against you.  You can defend the
> charges from Mr. Pfeifer and still maintain that they are out of time.

(JK-5 at 16:6-17.)

The parties dispute whether Kehoe had an opportunity to cross-examine Mr. Pfeifer.

(*Compare* L21 SMF ¶ 12, *with* Pl. R. SMF ¶ 12).  Mr. Kehoe wanted to examine Mr. Pfeifer first,

but Mr. Oxfeld instructed him to call someone else:

> MR. OXFELD: . . . why don't you go downstairs and get your first
> witness?
> MR. KEHOE: Actually, my first witness is Kevin, who is right here.
> MR. OXFELD: We'll deal with that later.  Call somebody else first.
> MR. KEHOE: Mike.
> MR. STAS: We'll make Kevin the last witness.
> MR. OXFELD: While we're doing this, you both have testified.
> And I know you want to call Mr. Pfeifer.  I'm not sure that's going
> to happen.  You certainly have the right if he testified to cross-
> examine him and he would have the right to cross-examine you.  So
> I do think that because you both stated that this [the opening and
> rebuttal statements] is what you would testify to if you were under
> oath, you each have the opportunity to cross-examine the other
> person before the case is over.  Do you agree with that Mike?
> MR. STAS: Yes.

(JK-5 at 20:1-22.)  At his deposition, Kehoe admitted that he chose not to call Mr. Pfeifer as his

last witness because he "felt it was moot" in that it did not comport with his trial strategy.  (Mar. 31 Tr. at 110:114-15; 118:18-22.)  Kehoe indicated that the reason he wanted Mr. Pfeifer to testify first is so that Mr. Pfeifer would "testify that he was following proper procedure," which could then be impeached.  (Mar. 31 Tr. at 117:13-24.)

Kehoe was found guilty of the charges.  (*See* P-23.)  In unanimous findings of fact dated April 2, 2013, Kehoe was found guilty of conduct that reflected discredit to Local 21 under Article 12, Section 1, for taking pictures of another union member and posting them to social media, and not taking them down.  (JK-6.)  The Trial Board took cognizance of the charges despite Kehoe's contention that they were time-barred, finding that Mr. Pfeifer's initial complaint was timely filed and the Executive Board's decision to try to resolve the charges informally should not, in fairness, operate as a bar to the charges being heard, especially because Kehoe had not removed the photographs from Facebook despite a "strong suggestion" that he do so.  (*Id.* at 5.)  Additionally, the Trial Board found that "[i]n law, periods of limitations are often extended when one party is required to respond to the allegations of another party."  (*Id.* at 6.)  With respect the charges, the Trial Board found it

> noteworthy that Kehoe, after taking the pictures in question, some of which were marked into evidence at the hearing, put the photos on his Facebook page.  They were still posted as of the day of the hearing, February 25, 201[3]. . . . It should be noted, for the record, that it was strongly suggested [during an informal meeting held with the Executive Board and Kehoe] that Kehoe remove any photos he had on the internet as they might be considered as bringing discredit on the Local.

(*Id.* at 2, 5.)  Kehoe was fined $500 as a penalty, with $250 due immediately and the "additional $250 held in abeyance provided that for three years from the date of the incident no other allegations against Kehoe come to the attention of the Local."  (*Id.* at 7.)  Kehoe ultimately paid

6

$250.  (*See* JK-9; *see also* L21 ¶¶ 14, 15.)

On April 15, 2013, the findings were read at the general meeting before the body.  (P-5; JK-13; P-25.)  Forty-five members of Local 21 were present at the meeting, but neither Kehoe nor Mr. Pfeifer were present.  (P-5.)  After the reading the floor was open to debate by the membership followed by a vote to uphold or decline the findings.  (JK-13.)  No member debated the findings, and the forty-five present members voted unanimously to uphold the findings of the Trial Board as to the guilt and penalty for both Kehoe and Mr. Pfeifer.  (JK-13; P-5.)

Later on April 15, 2013, after Kehoe learned that he had been found guilty, he wrote an email to Mike Stas in which he threatened to "bring you and the executive board up on charges for violation of our bylaws" and stated that he would "hire an attorney" in order to "protect [his] rights."  (JK-7.)

On April 16, 2013, Mike Stas wrote a letter to Matthew Loeb, President of I.A.T.S.E. International, in which he urged Mr. Loeb to "uphold the finding and the unanimous guilty vote and penalty decided by the membership" with respect to the Pfeifer matter.  (P-5.)[4]  Mr. Stas also "enclosed emails and the latest correspondence from Joseph Kehoe who persists that he is not guilty of anything" and referenced Kehoe's April 15, 2013 email as "threatening" Local 21.  (*Id.*)  Stas continued:

> [Kehoe] is a convicted pedophile and was sentenced to 3 years in prison when he was a member of local 534.  The local clearly should have taken action and pulled his card then for conduct unbecoming a member.  Just some insight as to what we are dealing with.  During the trial, no reference was ever made to this to change the outcome of the trial.  We clearly addressed the [September 28, 2012] incident in the charges.

---

[4] Article 8, Section 2 of the Local 21 Constitution and By-laws states that Local 21 "shall forward to the General Office a report of all charges filed against members of the Local with a statement of the Local's action thereon."

(*Id.*)

On April 18, 2013, Kehoe filed an appeal of the Executive Board's decision relating to the Pfeifer matter to the membership. (JK-8.)  On April 24, 2013, Mr. Oxfeld wrote a letter to Kehoe in which he acknowledged Kehoe's appeal to the membership and further stated that "if the body affirms the decision of the Executive Board, I will instruct Mr. Gutowski to take appropriate action until such time as you comply with the determination of the Executive Board." (JK-10.)  On May 8, 2013, Kehoe responded to Mr. Oxfeld's April 24th letter.  (JK-11.)  Kehoe objected to Mr. Oxfeld's involvement in the matter, stating, "You are the attorney for our local to represent us, as a local when we require it.  You have nothing to do with the internal operations of our union including these charges and pending appeal and to be quite honest anything you say is meaningless to me."  (*Id.* at 2.)  Stated differently, Kehoe contended that Mr. Oxfeld lacked "any authority to act in the discipline of the members or instruct the Business Agent [*i.e.,* Mr. Gutowski] on how to deal with our member[s]."  (*Id.* at 6.)  Kehoe further stated that the Executive Board should contact him directly, as he intended to return all future correspondence from Mr. Oxfeld.  (*Id.* at 2.)  Additionally, Kehoe once again raised his argument that the statute of limitations referenced in the Local 21 Constitution and By-laws should have barred Mr. Pfeifer's charges.  (*Id.* at 3, 4.)

Kehoe was advised that he could appeal the decision of the Executive Board before the body at the May 1, 2013 general meeting, provided that his appeal was limited to no more than 30 minutes.  (P-6.)  However, when Kehoe stood to appeal the decision of the Executive Board, a fellow member (Ben Kilmer) made a point of order that Kehoe's chance for an appeal should have been at the last meeting (*i.e.*, the April 15, 2013 meeting during which the members upheld the Executive Board's findings) but was not present for that meeting.  Accordingly, Mr. Kilmer "made

a motion to stop waisting [sic] the Local's time and move on, seconded by Claudio DiZefalo." (P-28 at 2; *see also* JK-12 (noting that Mr. Kilmer's motion "carried unanimously without debate" and that "if it [is] the wish of the membership that this proceed to a higher tribunal so be it").)

Kehoe thereafter appealed to I.A.T.S.E International. (JK-12, JK-14.) I.A.T.S.E. International requested a response from Local 21. (P-7.) Via letter dated May 25, 2013, Mike Stas responded to the request, and reiterated that at the general meeting on April 15, 2013, the forty-five present members voted unanimously to uphold the findings of the trial board as to the guilt and penalty for both Kehoe and Mr. Pfeifer, and that neither Kehoe nor Mr. Pfeifer were present at that meeting. (P-8.) Mr. Stas continued:

> I am not sure as to what [Kehoe] is appealing. The trial board recommendations or the vote by the membership. He had every opportunity to appeal to the membership on April 15 before a vote was taken. He was sent a copy of the trial board recommendations and the date of the meeting. The appeal he sent me was in May. After the process was completed. He was told his next appeal was to the International President. As President, I am asking you to uphold the findings and the unanimous guilty vote and penalty decided by the membership on April 15, 2013.

(*Id.*)

On July 1, 2013, I.A.T.S.E. International rejected Kehoe's appeal and adopted the finding of Local 21. (JK-15.) I.A.T.S.E. International found that Kehoe's "right to report unsafe conditions is protected and guaranteed" but that "the posting of pictures on Facebook with pithy, kitschy comments was in part intended to bully, embarrass, and harass Brother Pfeifer." (*Id.*) Specifically, it was noted that after Pfeifer had been removed from the forklift "there was no need for you to have continued to post the pictures unless you intended to embarrass and harass Brother Pfeifer[,]" yet the "testimony and evidence established, however, that you had not taken down the

pictures as late as October 22, 2012." (*Id*. at 1-2.)  With respect to Kehoe's statute of limitations argument, I.A.T.S.E International determined that the Executive Board is "imbued with authority to resolve disputes between members before invoking the trial process," and, further, that the applicable 60 day period reset each day the pictures appeared on Facebook.  (*Id*.)  Accordingly, I.A.T.S.E. International found that "there is no merit to your claim that the charges were untimely." (*Id*.)

On July 24, 2013, Kehoe appealed the July 1, 2013 ruling to the General Executive Board. (JK-16; *see also* JK-42 (summary of appeal).)  The General Executive Board reviewed Kehoe's appeal, and the I.A.T.S.E. International President recused himself and did not participate in the Board's deliberations or decision.  (JK-43.)  The General Executive Board denied the appeal and affirmed the July 1, 2013 decision of I.A.T.S.E. International.  (*Id*.)  In pertinent part, the General Executive Board: found no merit to Kehoe's claim that Pfeifer's charges against him were untimely; dismissed Kehoe's claims regarding procedural due process with respect to his ability to call Mr. Pfeifer as a witness; and found that Mr. Oxfeld's attendance at the hearing "was not improper because he was there to ensure that the trial was held in accordance with the International and Local's Constitution and Bylaws and to ensure that Kehoe's and Pfeifer's due process rights were protected."  (*Id*.)

Via letter dated August 8, 2013, Mr. Oxfeld sent a letter to Kehoe in reference to the "spates of recent letters to President Stas" threatening litigation[5] and advised Kehoe to have only his attorney contact Local 21 going forward.  (JK-19.)

Further, the August 8, 2013 letter from Mr. Oxfeld noted that, as of one-week prior, the

---

[5] The Court notes that these underlying letters from Kehoe are not readily apparent in the record.

subject photographs from the Pfeifer matter were still posted, despite Kehoe having been "specifically directed to remove anything that could be considered disparaging or defamatory or reflect badly on the union or any of its members." (*Id.*) Via letter dated September 5, 2013, the Local 21 Executive Board stated as follows:

> Brother Kehoe,
>
> You have been directed by Local 21 and the International President to remove all pictures posted on Facebook pertaining to the charges by Brother Kevin Pfeifer.
>
> Because of your failure to abide by this directive by Local 21 and the International President, the Executive Board of Local 21 requires you to pay in full the additional $250 that was held in abeyance for a three year period if no other incident occurred.
>
> You have 30 days from the above date to fulfill this financial obligation.

(P-12.) Via email dated September 18, 2013, Kehoe objected on three grounds: first, that Local 21 had no authority over Kehoe's personal Facebook page; second, that he was never "specifically directed" to remove the photographs; and third, that he had already removed the photographs previously. (JK-22; P-13.) Kehoe further advised that he had initiated charges with the National Labor Relations Board (NLRB) and threatened to file charges "with the international against the entire executive board." (*Id.*) Finally, Kehoe made clear that he would not pay the additional $250: "take me off the call list if you want, that will be just more charges against you, i [sic] no longer care. The choice is yours." (*Id.*). As of October 5, 2013, Kehoe was declared a member not in good standing due to nonpayment. (JK-27.) Via letter dated December 10, 2013, Mr. Seubert advised Kehoe that if he did not pay the $250 he would be automatically expelled from Local 21 on as of January 5, 2014. (JK-37; *see also* JK-31 / P-18.) On December 16, 2013, Kehoe

11

responded to Mr. Seubert as follows:

> Regarding the empty threat of expulsion.  Go ahead and expel me if you want to.  As you and the local has [sic] been notified before this is illegal.  I was never directed to remove the photographs of the damage done by Brother Pfeifer.  Not by Local 21, not by President Loeb, not by anybody.  Neither you nor the corrupt President Stas has any evidence whatsoever that this was done because it never happened and you cannot add it on later.  I will not pay the fine because it is illegal.  If you expel me I shall simply add it to the list of federal charges.

(JK-38 / P-19.)  Kehoe was expelled as of January 5, 2014.  (*See* P-29.)

## B.  May 2013 Incident (Pulse Lighting)

Kehoe and Michael Katz worked a job together in Seaside Heights, New Jersey between the dates of May 21, 2013 and May 24, 2013.  (L21 SMF ¶ 26.)  The Seaside Heights work was non-union work for Pulse Lighting.  (*Id.* ¶ 31.)  At one point, after completing a portion of work, Kehoe left the fork tines of the forklift in a raised position.  (*Id.* ¶ 27.)  On the last day, when Mr. Katz and Kehoe went on their lunch break, Kehoe took the keys to the forklift with him and left without his radio.  (*Id.* ¶ 28.)  Pulse Lighting attempted to retrieve the keys so that they could continue the job during the lunch break, but Pulse Lighting was unsuccessful in getting the keys returned.

As a result of Kehoe and Mr. Katz's actions during the Seaside Heights work, on July 12, 2013, Mr. Gutowski filed charges against both individuals with Local 21 for conduct unbecoming a member, pursuant to Section 8 of the Local 21 Constitution.  (P-9.)  Via letter dated August 19, 2013, Mr. Seubert advised Kehoe that the Executive Board had taken cognizance of the charges. (P-10.)  On September 17, 2013, Kehoe responded, and made multiple requests for information in preparation of the hearing, and also requested that the trial be before the membership.  (JK-23.)

On September 20, 2013, Mr. Oxfeld responded to Kehoe's September 17th letter.  (JK-24.)  In response to Kehoe's requests for information, Mr. Oxfeld stated that: there was no CBA between Local 21 and Pulse Lighting, nor Local 21 and Local 624; there was no steward for the job; Local 21 lacked knowledge concerning a rental agreement between Pulse Lighting and the company that provided the forklifts; a list of contact information for all Local 21 workers assigned to the Pulse Lighting job would be provided in advance of the hearing date; the request for a list of all Local 21 members who are certified lull operators was immaterial and would not be provided.  (*Id.*) Additionally, Mr. Oxfeld granted the request for the trial to be held before the membership.  (JK-*id*; *see also* JK-26 (noting that the trial would be before the membership).)  On September 25, 2013, Kehoe responded to Mr. Oxfeld's September 20th letter and, in part, stated that he had filed charges with the NLRB, and also reiterated his belief that Mr. Oxfeld had "no place" at the upcoming disciplinary hearing.  (JK-25.)

The disciplinary hearing was held on November 4, 2013.  (*See* JK-28.)  At the hearing, Mr. Stas read Mr. Gutowski's charges as follows:

> Between 5/21/13 and 5/24/13 Michael Katz and Joseph Kehoe did bring discredit to Local 21 by disrespecting the client, in this case, Pulse Stage Lighting.  This treatment of the client brought undue hardship upon the Local, which was in the process of securing a collective bargaining agreement with Pulse.
> In addition, while operating the client's forklift, Brother Kehoe and Brother Katz removed the keys and left the area for their lunch break, when requested to return the keys and in not doing so when requested, brought discredit to Local 21.
> Also during the course of the operation of the forklift, Brother Kehoe, who is a certified operator, did operate his lift in an unsafe manner.

(JK-28 at 4:1-14.)  Mr. Gutowksi, in his opening statement, stated that the evidence would show that Kehoe's actions in not returning the keys were "detrimental" to Local 21 in trying to secure a

13

collective bargaining agreement with Local 21.  (*Id.* at 5:13-19.)  In his opening statement, Mr. Gutowski stated that

> [w]ith regards to the operating of the forklift, that was something that I put in [the charges] just so we could discuss that here.  I do not necessarily believe that that is conduct unbecoming a member, if you operate a forklift unsafely, but it does have an adverse effect on the local with respect to the client to which we are sending the people to do a job.

(*Id.* at 5:20 to 6:1.)  Kehoe admitted to operating the forklift in an unsafe manner.  (*See id.* at 64:19-25.)

Mr. Gutowski presented three witnesses who testified that, after Kehoe and Mr. Katz left for their lunch break with the keys to the forklifts, a request was made over the radio to have the keys returned, and they believed Kehoe to be aware of these requests to return the keys.  (*Id.* at 9:19 to 10:12 (Harry Kopy); 21:24 to 22:8 (Brian Connell); 38:24 to 41:9 (Robert Suchochi).) Kehoe maintained that he did not hear the requests to return the keys, as he appropriately did not have his radio with him, and that he only became aware of the requests towards the end of the lunch break, at which point he texted Mr. Gutowksi.  (*See id.* 38:24 to 41:9.)  Nevertheless, Robert Suchochi of Pulse Lighting testified that the episode made him question whether or not to sign a CBA with Local 21 because it put a "sour taste" in his mouth.  (*Id.* at 34:1 to 35:16.)  Kehoe chose not to present any witnesses in his favor.  (*See* JK-28; L21 SMF ¶ 33.)

After closing arguments, Mr. Stas dismissed Mr. Gutowski, Mr. Katz, and Kehoe from the meeting room, at which point the membership discussed the evidence presented off-the-record. (JK-28 at 66.)  Ultimately, Kehoe was found guilty of conduct unbecoming, with 41 members voting guilty, 6 voting not guilty, and 2 abstaining.  (*Id.* at 67:1-3.)  Kehoe was subsequently fined $2,757.18 and suspended from the call list pending payment of the fine.  (*See* JK-36.)

On December 3, 2013, Mr. Stas wrote a letter to I.A.T.S.E. International President Loeb, in which he requested that President Loeb uphold the decision and penalty for the trial held before the Local 21 membership.  (P-16.)

Kehoe appealed the decision in December 2013.  (JK-34; J-39.)  Kehoe argued there was no evidence of his wrongdoing and he was denied access to a complete list of licensed lull operators within Local 21.  (*Id.*)  The appeal was denied on March 25, 2014, after I.A.T.S.E. International determined that "the evidence adduced during trial was more than sufficient for the membership to conclude that you were guilty and that the punishment is appropriate" and that Kehoe received a fair trial and substantive and procedural due process.  (JK-46.)  I.A.T.S.E. International cited in part to the text message Kehoe had sent to Mr. Gutowski after he became aware of the requests to have the keys returned, and determined that Kehoe's "conduct was deliberate, intentional and unprofessional.  It impeded the Local's collective bargaining negotiations and was not exemplary of the work ethic the Local wishes to set for its members and referents."  (*Id.*)

### C.  Other Related Charges

On September 19, 2013, Mr. Stas filed charges against Kehoe for comments Kehoe allegedly posted on Facebook.  (P-14.)  Mr. Stas stated that the posts amounted to conduct unbecoming a member on "numerous levels," in that Kehoe had allegedly posted accusations that Mr. Stas is "corrupt with no evidence," that he "lied to the membership in the newsletter," and that he "manipulated the Constitution."  (*Id.*)[6]  The Executive Board took cognizance of the charges on October 28, 2013.  (P-26.)  Via letter dated November 25, 2013, Kehoe advised in part that he

---

[6] The underlying Facebook posts are not in the record before the Court.

would not attend the December 2, 2013 trial on the charges.  (JK-30.)  Ultimately, the charges were not pursued.[7]  (*See* Apr. 15 Tr. at 102:1-9.)

On October 27, 2013, Kehoe filed charges against Mr. Stas for conduct unbecoming a member and for bringing discredit upon the union.  (P-15.)  Kehoe alleged that Mr. Stas "has refused to do his job as President" by "refus[ing] to provide my requests for certain evidence . . . regarding the [Pulse Lighting] charges . . . , instead sending the request to go to our attorney where the evidence was illegally denied."  (*Id.*)  Kehoe also objected to Mr. Oxfeld's involvement in the disciplinary hearing, again arguing that Mr. Oxfeld has "no authority or business" being involved. (*Id.*)  Additionally, Kehoe objected to the imposition of the renewed $250 fine stemming from the Pfeifer matter, arguing that it was invalid because it was not imposed via "proper charges" or evidence.  (*Id.*)  The Executive Board declined to take cognizance of the charges.  (P-27.)

On January 10, 2014, after Kehoe had initiated the action in this Court, Kehoe filed charges against Mr. Stas and the entire Local 21 Executive Board.  (JK-41; *see also* JK-40 (cover letter).) The charges were essentially the same as those filed previously on October 27, 2013 against Mr. Stas, but also included charges against the entire Executive Board for failing to take cognizance of the charges, as well as Mr. Gutowski for filing the charges relating to the Pulse Lighting incident despite a purported lack of evidence.  (JK-41.)  Via letter dated February 7, 2014, I.A.T.S.E. International found that Local 21's decision to refuse to take cognizance of the charges "to be in order" and determined that matter was now considered closed.  (JK-44.)

---

[7] On December 2, 2013, Mr. Oxfeld responded to Kehoe's November 25th letter (JK-32), and Kehoe replied later that night via email (JK-33).  Then, on December 4, 2013, Mr. Oxfeld and Kehoe traded emails again.  (JK-35.)  The Court finds this evidence immaterial to Kehoe's underlying Complaint and therefore need not discuss the substance of the correspondence in detail.

### D.  Unsuccessful NLRB Appeals

Kehoe filed four complaints with the National Labor Relations Board ("NLRB") against Local 21 and various employees from August 13, 2013 to December 18, 2013.  (*See* JK-20, JK-21; *see also* L21 SMF ¶ 39-44.)  All four of Kehoe's complaints with the NLRB were dismissed by the Regional Director of Region 22.  (*Id.*)  Plaintiff appealed the Regional Director's decisions, but his appeals were denied by the NLRB's general counsel substantially for the reasons set forth by the Regional Director (*i.e.*, that Local 21 is not an exclusive hiring hall).  (*Id.*)[8]

### **PROCEDURAL BACKGROUND**

Kehoe commenced this action on December 23, 2013 with the filing of a complaint listing thirty-two causes of action and seeking relief pursuant to the Labor-Management Relations Act, 42 U.S.C. § 141, *et seq.* ("LMRA"); the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq.* ("LMRDA"); and 42 U.S.C. § 1983.  (ECF No. 1.)  Kehoe also submitted an application to proceed *in forma pauperis*, and an application for pro bono counsel.  (*Id.*)  On January 9, 2014, United States District Judge Faith S. Hochberg (Ret.) granted Kehoe's application to proceed *in forma pauperis*, denied his application for pro bono counsel, and dismissed claims arising under 42 U.S.C. § 1983 (Counts 9, 13, 17, 21, 25, and 29) as well as claims against Defendants Pulse Lighting and Robert Suchochi.  (ECF No. 2.)

On February 10, 2014, Kehoe filed the operative Amended Complaint, seeking relief under LMRA and LMRDA against the following Defendants: I.A.T.S.E. International; Local 21; Matthew Loeb, President of I.A.T.S.E.; Michael Stas, President of Local 21; John Seubert,

---

[8] The parties dispute whether Kehoe appealed all four decisions or only three.  Kehoe contends that he appealed three decisions and voluntarily withdrew one.  (*Id.*)  The Court finds the distinction immaterial.

Secretary of Local 21; Stanley Gutowski, Business Agent for Local 21; Sanford Oxfeld, attorney representing I.A.T.S.E.; Pulse Lighting, a company with a collective bargaining agreement with Local 21; and Robert Suchochi, vice-president of Pulse Lighting (collectively "Defendants"). (*See* Am. Compl. ¶¶ 4-10.) [9]

In July and August 2014, Defendants (with the exception of Pulse Lighting and Robert Suchochi) moved to dismiss Kehoe's Amended Complaint. (*See* ECF Nos. 27 (Local 21 Defendants), 32 (I.A.T.S.E. and Matthew Loeb), 36 (Sanford Oxfeld).) On February 20, 2015, the Court granted the motions in part. (ECF No. 63.) Kehoe's claims against Defendants I.A.T.S.E. International and Matthew Loeb were dismissed. (*Id.*) In addition, Kehoe's claims pursuant to the LMRA were dismissed as to the remaining Defendants. (*Id.*) Accordingly, Kehoe's case proceeded against the Local 21 Defendants (*i.e.*, Local 21, Michael Stas, John Seubert, Stanley Gutowski), Sanford Oxfeld, Pulse Lighting, and Robert Suchochi for alleged violation of the LMRDA. (*Id.*)

On March 9 and March 19, 2015, respectively, Oxfeld and the Local 21 Defendants answered the Amended Complaint. (ECF Nos. 64, 68.) On March 17, 2015, the Clerk of the Court entered default as to Pulse Lighting and Robert Suchochi for failing to plead or otherwise defend. [10]

Also on March 17, 2015, the matter was reassigned to the undersigned. (ECF No. 67.)

Kehoe was deposed on March 31, 2015 and April 15, 2015. (*See* JK-50 and JK-51, respectively.)

---

[9] The Court notes that the Amended Complaint was initially filed on February 10, 2014 at docket entry number 6, but that on December 22, 2014, Kehoe filed a motion to amend the Amended Complaint in order to correct a spelling error. (*See* ECF No. 59.) On January 9, 2015, the Court granted Kehoe's motion to amend, explicitly noting that the amendment was purely technical. (ECF No. 62.) Accordingly, for chronological purposes, the Court simply references the filing of the initial Amended Complaint, although acknowledges that the operative Amended Complaint is docketed at ECF No. 59-2.

[10] As of this writing, Kehoe has not sought default judgment as to Pulse Lighting or Robert Suchochi.

On July 17, 2015, the Court granted Kehoe's renewed application for pro bono counsel for settlement purposes only.  (ECF No. 86.) After unsuccessful settlement discussions on December 14, 2015, the Court set a briefing schedule for dispositive motion practice.  (ECF No. 97.)

On February 8, 2016, the Local 21 Defendants and Oxfeld filed the instant motions for summary judgment.  (*See* ECF No. 103-1 ("L21 Mov. Br."); ECF No. 104-1 ("Oxfeld Mov. Br.").)  On April 22, 2016, Kehoe opposed both motions.  (ECF No. 112 ("L21 Opp. Br."); ECF No. 113 ("Oxfeld Opp. Br.").)  On May 3, 2016, the Local 21 Defendants filed a reply.  (ECF No. 117 ("L21 Reply Br.").)  On May 11, 2016, consistent with this Court's Order, Oxfeld filed a reply.  (ECF No. 115 ("Oxfeld Reply Br."); *see also* ECF No. 120.)   The matter is now ripe for adjudication.


## LEGAL STANDARDS

### A.  Motion for Summary Judgment

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "To demonstrate that no issue is in dispute as to any material fact, the moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial."  *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "To survive the motion, the non-moving party must show specific facts such that a reasonable jury could find in its favor." *McCabe*, 494 F.3d at 424 (citing Fed. R. Civ. P. 56(e)); *see also Celotex*, 477 U.S. at 322-23 (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)). Stated differently, when the non-moving party's evidence in opposition to a properly-supported motion for summary judgment is merely "colorable" or "not significantly probative," the Court may grant summary judgment. *See Anderson*, 477 U.S. at 249-50.

**B. The Labor-Management Reporting and Disclosure Act of 1959**

As detailed *infra*, Kehoe's causes of actions arise under the Labor-Management Reporting and Disclosure Act (LMRDA). Enacted in 1959, the LMRDA's "primary objective [is] ensuring that unions [are] democratically governed and responsive to the will of their memberships."

20

*Finnegan v. Leu*, 456 U.S. 431, 436 (1982).  To that end, Title I of the LMRDA, codified at 29 U.S.C. § 411, is entitled the "Bill of Rights of Members of Labor Organizations" and was adopted as an amendment on the Senate floor by "legislators [who] feared that the bill did not go far enough because it did not provide general protection to union members who spoke out against the union leadership."  *United Steelworkers of Am., AFL–CIO–CLC v. Sadlowski*, 457 U.S. 102, 109 (1982).

Although the LMRDA provides for a private cause of action, 42 U.S.C. § 412,[11] "[t]here is a well-established, soundly based policy of avoiding unnecessary judicial intrusion into the affairs of labor unions."  *Local No. 48, United Bhd. of Carpenters & Joiners of Am. v. United Bhd. of Carpenters & Joiners of Am.*, 920 F.2d 1047, 1051 (1st Cir. 1990) (citations omitted).  "The internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided for in the [LMRDA] . . . ."  *Gurton v. Arons*, 339 F.2d 371, 375 (2d Cir. 1964).  As such, in deciding cases under the LMRDA, courts "must preserve a careful balance between the protection of the rights of individual members on the one hand, and the maintenance of strong and effective union leadership and the avoidance of undue interference in internal union affairs on the other."  *Falcone v. Dantinne*, 420 F.2d 1157, 1164 (3d Cir. 1969); *see also Shultz v. United Steelworkers of Am., AFL-CIO-CLC (Dist. 15)*, 312 F. Supp. 1044, 1046 (W.D. Pa. 1970) (noting that the LMRDA "does not purport to take away from labor unions governance of their own internal affairs and hand that control over . . . to the courts").

---

[11] "Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."

1. <u>Free Speech Claims Under 29 U.S.C. § 411(a)(2) – Causes of Action 4, 8, 11, 14, 17, 20, 23, 25</u>

Subsection (a)(2) of the LMRDA's "Bill of Rights" is entitled "Freedom of speech and assembly" and states as follows:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to *express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting*, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2) (emphasis added).

"Nevertheless, the Supreme Court has held that a violation of free speech rights by itself is insufficient to violate § [411](a)(2). The infringement on free speech must be viewed with reference to the basic objective the LMRDA." *Conery v. Niccollai*, 34 Fed. Appx. 839, 842-43 (3d Cir. 2002) (citations omitted). As the Supreme Court has explained, "[w]hether such interference with Title I rights gives rise to a cause of action under § [412] must be judged by reference to the LMRDA's basic objective: 'to ensure that unions [are] democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections.'" *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 354 (1989) (quoting *Finnegan v. Leu*, 456 U.S. 431, 441 (1982)). Thus, even though union members' right of free speech is given an "expansive protection" under the LMRDA, *Mallick v. Int'l Broth. of Elec. Workers*, 644 F.2d 228,

235 (3d Cir. 1981), the speech at issue must nevertheless "directly relate" to the union-member

relationship. *Semancik v. United Mine Workers of Am., Dist. No. 5*, 466 F.2d 144, 154 (3d Cir.

1972).

> ### 2. Improper Discipline Claims Under 29 U.S.C. § 411(a)(5) – Causes of Action 2, 6, 9, 12, 15, 18, 21, 24

Subsection (a)(5) is entitled "Safeguards against improper disciplinary action" and states

as follows:

> No member of any labor organization may be fined, suspended,
> expelled, or otherwise disciplined except for nonpayment of dues by
> such organization or by any officer thereof unless such member has
> been *(A) served with written specific charges; (B) given a
> reasonable time to prepare his defense; (C) afforded a full and fair
> hearing.*

29 U.S.C. § 411(a)(5) (emphasis added).

"What constitutes a full and fair hearing in a union disciplinary proceeding must be

determined from the traditional concepts of due process of law, the common law precepts

governing the judicial control of internal union affairs and the sparse case law since the adoption

of the LMRDA." *Falcone*, 420 F.2d at 1165. "Due process is flexible and calls for such procedural

protections as the particular situation demands in order to minimize the risk of error." *Tillman v.

Lebanon County Corr. Facility*, 221 F.3d 410, 421 (3d Cir. 2000) (quotation marks and

punctuation omitted).

A district court in the Fourth Circuit has identified four factors relevant to due process

under the LMRDA: (1) the existence of "some evidence" to support the charges made; (2) an

impartial tribunal; (3) an opportunity to confront "pertinent witnesses"; and (4) an opportunity to

present evidence. *See Yager v. Carey*, 910 F. Supp. 704, 715 (D.D.C. 1995) (internal citations

omitted), *aff'd*, 159 F.3d 638 (D.C. Cir. 1998).  In the Third Circuit, at the very least, the LMRDA's

due process guarantee includes the first and fourth prongs: that there be "some evidence" to support

the charges made (although the underlying offense need not be forbidden by written rule[12]); and

the "right to a hearing before an unbiased committee," *Knight v. Int'l Longshoremen's Ass'n.*, 457

F.3d 331, 342 (3d Cir. 2006) (citation omitted).

      3.   <u>Breach of Contract in Violation of the LMRDA – Causes of Action 3, 7, 10, 13,</u>
<u>16, 19, 22</u>

Violation of a union's constitution "is not actionable *per se* under the LMRDA." *Martire*

*v. Laborers' Local Union 1058*, 410 F.2d 32, 36 (3d Cir. 1969).  "It is settled that 'it is only when

. . . a claim is made that the constitution is being applied in such a way as to deprive the local

members of their secured rights that the documents (constitutions) may be considered.'"  *Id.*

(citations omitted).

Indeed, "courts typically defer to a union's interpretation of its own Constitution and will

not override that interpretation unless it is 'patently unreasonable.'"  *Executive Bd. of Transp.*

*Workers Union of Philadelphia, Local 234 v. Transp. Workers Union of Am., AFL-CIO*, 338 F.3d

166, 170 (3d Cir. 2003).  "Although this court has never explicitly defined 'patently unreasonable,'

the standard is undeniably a high one as '[c]ourts are reluctant to substitute their judgment for that

of union officials in the interpretation of the union's constitution, and will interfere only where the

official's interpretation is not fair or reasonable.'"  *Id.* (quoting *Local 334, United Ass'n of*

*Journeymen v. United Ass'n of Journeymen*, 669 F.2d 129, 131 (3d Cir. 1982) (citation omitted)).

---

[12] *See International Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 246 (1971).

## ANALYSIS

Kehoe's Amended Complaint contains twenty-five "causes of action" premised on eight separate "complaints."  (*See* AC.)  In this section, the Court will discuss each "complaint" as identified by Kehoe and analyze the corresponding "causes of action" ("COA") for each "complaint."  To avoid redundancy, the Court combines complaints 1 & 3, and 2 & 4 since they both relate to the Pfeifer matter and the Pulse Lighting matter, respectively.

The Court has carefully considered the evidence in the record and applicable law and ultimately concludes that Defendants are entitled to summary judgment on all causes of action. Although there may be some disputes as to certain facts in the record (*see* Opp. Br. at 4-6), Defendants have nevertheless demonstrated that the facts in dispute are not material; in other words, the Court concludes that Kehoe is lacking sufficient evidence to establish necessary elements, and no reasonable jury could find in Kehoe's favor based on the record before the Court.

**Complaints 1 and 3: The September 2012 Pfeifer Incident** (AC ¶¶ 13-41) **and the Demand for the Additional $250 Stemming from the Pfeifer Matter That Had Previously Been Held in Abeyance** (AC ¶¶ 75-82)

As noted, Pfeifer filed charges of harassment and conduct unbecoming against Kehoe after Kehoe took pictures of alleged damage caused by Pfeifer and posted them to Facebook.  After a disciplinary hearing, in unanimous findings of fact dated April 2, 2013, Kehoe was found guilty of conduct that reflected discredit to Local 21 for taking pictures of another union member and posting them to social media, and not taking them down.  (JK-6.)

a.   COA1: generalized violation of Title I of the LMRDA (AC ¶ 43)

In Causes of Action 1 and 5, Kehoe alleges generally that by doing the acts referenced in the relevant paragraphs, "defendants caused and/or permitted violation of Plaintiff's 14th Amendment

25

Right of Due Process and Title I of the [LMRDA] there by entitling Plaintiff to recover damages under Title I of the [LMRDA] and pursuant to 42 U.S.C. § 1983."  (Am. Compl. ¶¶ 42, 43, 67, 68.)  As an initial matter, the Court notes that Judge Hochberg previously dismissed with prejudice Kehoe's Section 1983 causes of action.  (*See* ECF No. 2.)

With respect to the alleged generalized violation of Title I of the LMRDA, the Court will grant summary judgment in Defendants' favor on these counts. As noted, the LMRDA permits a private cause of action where there has been "any violation of" Title I of the LMRDA. 42 U.S.C. § 412.  Necessarily, a plaintiff must therefore identify which provision of Title I has been violated. Kehoe has failed to present evidence sufficient to establish a "generalized violation" of Title I of the LMRDA to survive summary judgment on causes of action 1 and 5 because he has not established that such a generalized cause of action exists, especially where a plaintiff also seeks relief under particularized areas of the LMRDA. More significantly, for the reasons below, the Court concludes that Defendants are entitled to summary judgment on the LMRDA claims.  As such, Kehoe likewise cannot establish a generalized violation of Title I of the LMRDA. Accordingly, Defendants are entitled to summary judgment on these causes of action.

    b.  <u>COA 2 & 9: improper disciplinary procedures under 29 U.S.C. § 411(a)(5) (AC ¶¶ 45, 84)</u>

Under 29 U.S.C. § 411(a)(5), a union member may not be disciplined unless he has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.  *Id.*  With respect to a "full and fair hearing," the Court looks to traditional notions of due process.  *See Falcone*, 420 F.2d at 1165.

Here, a disciplinary hearing in the Pfeifer matter was held before Local 21 on February 25, 2013.  (*See* JK-5.)  Both Kehoe and Mr. Pfeifer presented evidence at the hearing, and Kehoe was

not restricted in the evidence that he presented.  (L21 SMF ¶¶ 9, 10.)  Kehoe's time limit was five

to seven minutes for his opening statement:

> MR. STAS: . . . We are going to try to limit the time [of opening
> statements] to something reasonable, like five, seven minutes.
> MR. KEHOE: I only have a couple pages.  I don't have a book here.

(JK-5 at 4:19-23.)  Kehoe never objected to this time limitation, nor was he cut off during his

opening, and he acknowledged that this time limitation was of no consequence to his opening.

(L21 SMF ¶¶ 21-23.)  Kehoe was given five minutes for his rebuttal statement after hearing Mr.

Pfeifer's charge:

> MR. OXFELD: Mr. Kehoe, having heard Mr. Pfeifer's charge, do
> you plead guilty or not guilty?
> MR. KEHOE: Not guilty and I have a statement to that effect. . . .
> MR. OXFELD: Mr. Kehoe, you said you had a statement to that
> effect?
> MR. KEHOE: Yes.
> MR. OXFELD: Let it be under five minutes.
> MR. KEHOE: Yes.

(JK-5 at 13:13 to 14:2.)  Kehoe acknowledged that he was able to read his entire rebuttal statement

without being cut off.  (L21 SMF ¶¶ 24, 25.)

In his rebuttal, Kehoe argued that the charges against him were time-barred and requested

the trial board to summarily dismiss the charges.  (*See* JK-5 at 14:8 to 16:5.)  Mr. Oxfeld refused

to permit a summary decision:

> MR. OXFELD: Mr. Kehoe, I'm not going to allow the board to
> make a decision summarily.  Your position [regarding the statute of
> limitations] is noted and will be addressed in the decision issued by
> the board and may be sustained or not sustained.  I will say this for
> the record, if you want to defend the charges, feel free to do so.  You
> will not be deemed to have waived your position that Mr. Pfeifer's
> charges are out of time.  To be clear, if you participate in defending
> charges, that will not be held against you.  You can defend the
> charges from Mr. Pfeifer and still maintain that they are out of time.

27

(JK-5 at 16:6-17.)

The parties dispute whether Kehoe had an opportunity to cross-examine Mr. Pfeifer, (*compare* L21 SMF ¶ 12, *with* Pl. R. SMF ¶ 12).  Mr. Kehoe wanted to examine Mr. Pfeifer first, but Mr. Oxfeld instructed him to call someone else:

> MR. OXFELD: . . . why don't you go downstairs and get your first witness?
> MR. KEHOE: Actually, my first witness is Kevin, who is right here.
> MR. OXFELD: We'll deal with that later.  Call somebody else first.
> MR. KEHOE: Mike.
> MR. STAS: We'll make Kevin the last witness.
> MR. OXFELD: While we're doing this, you both have testified. And I know you want to call Mr. Pfeifer.  I'm not sure that's going to happen.  You certainly have the right if he testified to cross-examine him and he would have the right to cross-examine you.  So I do think that because you both stated that this [the opening and rebuttal statements] is what you would testify to if you were under oath, you each have the opportunity to cross-examine the other person before the case is over.  Do you agree with that Mike?
> MR. STAS: Yes.

(JK-5 at 20:1-22.)  At his deposition, Kehoe admitted that he chose not to call Mr. Pfeifer as his last witness because he "felt it was moot" in that it did not comport with his trial strategy.  (Mar. 31 Tr. at 110:114-15; 118:18-22.)  Kehoe indicated that the reason he wanted Mr. Pfeifer to testify first is so that Mr. Pfeifer would "testify that he was following proper procedure," which could then be impeached.  (Mar. 31 Tr. 117:13-24.)  As noted, Kehoe was ultimately found guilty.

Kehoe was fined $500 as a penalty, with $250 due immediately and the "additional $250 held in abeyance provided that for three years from the date of the incident no other allegations against Kehoe come to the attention of the Local."  (JK-6 at 7.)  Kehoe paid the initial $250 on April 18, 2013.  (*See* JK-9.)  The remaining $250 was held in abeyance until September 5, 2013, at which time the Local 21 Executive Board accelerated payment on grounds that Kehoe failed to

follow direction to remove all pictures posted on Facebook pertaining to the Pfeifer matter.  (P-12.)  Via email dated September 18, 2013, Kehoe objected on three grounds: first, that Local 21 had no authority over Kehoe's personal Facebook page; second, that he was never "specifically directed" to remove the photographs; and third, that he had already removed the photographs previously.  (JK-22; P-13.)

As of October 5, 2013, Kehoe was declared a member not in good standing due to nonpayment.  (JK-27.)  Via letter dated December 10, 2013, Mr. Seubert advised Kehoe that if he did not pay the $250 he would be automatically expelled from Local 21 on as of January 5, 2014.  (JK-37; *see also* JK-31 / P-18.)  On December 16, 2013, Kehoe reiterated that he had never been directed to remove the photographs and stated that he would "not pay the fine because it is illegal." (JK-38 / P-19.)  Kehoe was expelled as of January 5, 2014 as a result of nonpayment.  (*See* P-29.)

The Court finds that Kehoe has failed to establish a prima facie case under section 411(a)(5).

First, the Court finds that Kehoe has not demonstrated a genuine issue of material fact with respect to his argument that the statute of limitations within the Constitution should have prevented Pfeifer's claim from being heard.  There is nothing in the Constitution which prohibits a relaxation of the statute of limitations for bringing charges, especially where the union makes an effort to resolve an issue between members informally.  Further, as Kehoe was ultimately found guilty of harassment and conduct unbecoming for posting the pictures to Facebook, the Court agrees with Defendants that the statute of limitations reset every day the pictures were posted to Facebook.  Accordingly, it was not inappropriate for Mr. Oxfeld to deny Kehoe's request for a summary decision and dismissal relating to his statute of limitations argument.

Second, the Court finds that Kehoe was afforded due process, despite being given a time limit for his opening and rebuttal statements.  As an initial matter, the time limits were given before Kehoe began speaking.  With respect to the opening statement limitation, Kehoe never objected to this time limitation, nor was he cut off during his opening, and he acknowledged that this time limitation was of no consequence to his opening.  (L21 SMF ¶¶ 21-23.)  With respect to the rebuttal limitation, Kehoe acknowledged that he was able to read his entire rebuttal statement without being cut off.  (L21 SMF ¶¶ 24, 25.)  Additionally, Mr. Pfeifer was subject to the same limitation.  Furthermore, it is not clear how the outcome would have been different had Kehoe been given additional time for his opening and rebuttal.

Third, the Court finds that Kehoe was afforded due process, despite being unable to call Pfeifer as his first witness.  Kehoe made clear at his deposition that the reason he wanted Pfeifer to testify first had nothing to do with the appropriateness of posting the photos to Facebook, but rather was related to Pfeifer's ability to safely operate a forklift.  (*See* Mar. 31 Tr. 117:13-24.)  Additionally, Kehoe was specifically given the opportunity to cross-examine Pfeifer before the conclusion of the hearing, but he chose not to call him in light of his unrelated trial strategy having been made moot.

Fourth, although Kehoe argues that Mr. Stas was "not open minded" when it came to Kehoe (*see* Opp. Br. at 9), there is insufficient evidence to show that alleged bias on the part of Mr. Stas amounted to denial of due process rights.  It is true that there is evidence in the record to suggest that Mr. Stas believed that Kehoe should have been expelled from Local 21 due to Kehoe's conviction on charges related to pedophilia (*see* P-5), but the same piece of evidence also makes clear that the charges against Kehoe in the Pfeifer matter were unrelated, and a review of the

evidence related to the Pfeifer matter confirms that no reference was ever made to Kehoe's previous charges.  Kehoe has pointed to no other concrete evidence in the record on which a reasonable jury could conclude that Mr. Stas was not "open minded" when it came to Kehoe in a way that denied Kehoe his due process rights.

Fifth, Kehoe's contention that he was denied due process because he was "denied access to potential witness information" (*see* Opp. Br. at 10) is without merit because the potential witnesses were entirely unrelated to the reason for Kehoe's guilt.  Harassment of Mr. Pfeifer by posting the photos to Facebook is entirely distinct from the other members on the job site who may have agreed that Mr. Pfeifer was operating the machinery improperly.  As noted by I.A.T.S.E. International, the posting of the pictures even after Mr. Pfeifer was removed from the forklift showed that the posting was "intended to embarrass and harass" Mr. Pfeifer, as opposed to a safety issue.  (JK-15.)

Sixth, the Court finds that there was sufficient evidence to support the findings of guilt.  To the extent that there is a dispute over whether the Facebook postings included critical captions, the Court finds it immaterial.  I.A.T.S.E. International, in denying Kehoe's appeal, noted that "the posting of pictures on Facebook with pithy, kitschy comments was in part intended to bully, embarrass, and harass Brother Pfeifer."  (JK-15.)  Kehoe complains that the decision improperly "quoted and used evidence not on the record to support [the] justification for upholding [Local 21's] decision," (AC ¶ 40), and argues that, in light of the reference to captions and the lack of evidence to support their existence, he should have had an opportunity to contest them at the appellate level.  The Court finds that this is not enough to state a prima facie claim under section 411(a)(5).  As an initial matter, the Court notes that Kehoe did not produce as evidence the

Facebook posts in question.  Additionally, at his deposition Kehoe stated that although the he could not recall one way or the other whether he posted critical captions, it was "certainly possible" that he did.  (*See* Mar. 31 Tr. at 209:25 to 210:23.)   Thus, Kehoe has not proven that the captions were absent from the record.  More significantly, there is not enough in the record before this Court to conclude that Kehoe was denied due process in light of I.A.T.S.E. International's reference to "pithy, kitschy comments," because there is enough independent evidence to support the findings of guilt.  For example, I.A.T.S.E. International also found that the posting of the pictures even after Mr. Pfeifer was removed from the forklift suggested that it was "intended to embarrass and harass" Mr. Pfeifer.  (JK-15.)  Indeed, Mr. Pfeifer testified to that effect.  (Feb. 25, 2013 Tr. at 17:2 to 18:4; 29:15-25.)  Kehoe has not established that he was denied due process because Kehoe has not established a genuine issue of fact regarding the existence of "critical captions," since when viewing the record holistically the Court finds that there was enough evidence to support the underlying finding of guilt and I.A.T.S.E.'s denial of Kehoe's appeal, regardless of the reference to the captions.

Finally, it was not improper for Local 21 to accelerate payment on the remaining $250 fine.  Even if there is a fact dispute as to whether Local 21 specifically directed Kehoe to remove the Pfeifer photographs from his Facebook page, the initial punishment nevertheless permitted acceleration of payment: the additional $250 was to be "held in abeyance provided that for three years from the date of the incident no other allegations against Kehoe come to the attention of the Local." (JK-6 at 7.)  As noted, in July 2013, Mr. Gutowski filed charges against Kehoe with Local 21 for conduct unbecoming a member in connection with the Pulse Lighting incident.  (P-9.)  Accordingly, under the plain terms of the Pfeifer punishment, Local 21 was permitted to accelerate

payment of the remaining $250, because other allegations against Kehoe had in fact come to the attention of the Local.

For these reasons, the Court shall grant summary judgment in favor of Defendants for causes of action 2 and 9.[13]

 c. COA 3 & 11: right to free speech under 29 U.S.C. § 411(a)(2) (AC ¶¶ 47, 88)

Under 29 U.S.C. § 411(a)(2), a union member has the right to "express any views, argument, or opinions" subject to the union's "reasonable rules as to the responsibility of every member toward the organization . . . ." *Id.*  The LMRDA's basic objective—that unions are democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections—is the touchstone for a claim under section 411(a)(2).  *See Lynn*, 488 U.S. at 354 (quotation omitted).  Accordingly, to make out a prima facie case under section 411(a)(2), the speech at issue must "directly relate" to the union-member relationship.  *Semancik*, 466 F.2d at 154.  As an initial matter, the Court further notes that Judge Hochberg's rulings at the motion to dismiss stage are inapposite at the summary judgment stage.  (*See* Opp. Br. at 6.)

Kehoe cannot make out a prima facie case under section 411(a)(2) because he cannot establish that the speech at issue directly relates to the union-member relationship.  In fact, the speech at issue was directed solely at a fellow union member, and had nothing to do with ensuring that Local 21 is democratically governed or that it is "responsive to the will of the union membership as expressed in open, periodic elections."  *See Lynn*, 488 U.S. at 354 (quotation omitted).  As aptly stated in I.A.T.S.E. International's July 1, 2013 letter denying Kehoe's appeal, although Kehoe's "right to report unsafe conditions is protected and guaranteed" under OSHA,

---

[13] The Court also concludes that because Kehoe has not stated a claim for denial of due process, it follows that Mr. Oxfeld's involvement did not deny Kehoe of due process.

there is no concomitant right to harass a fellow union member by posting embarrassing pictures to one's personal Facebook page.  Specifically, it was noted that after Pfeifer had been removed from the forklift "there was no need for [Kehoe] to have continued to post the pictures unless [Kehoe] intended to embarrass and harass Brother Pfiefer[,]" yet the "testimony and evidence established, however, that you had not taken down the pictures as late as October 22, 2012."  (JK-15 at 1-2.)

Regarding Kehoe's point that this matter was beyond the purview of Local 21 since the photos were posted to his personal Facebook page (*see* Opp. Br. at 13-14), the Court finds that Local 21's Constitution is broad enough to encompass Kehoe's activity here.  Specifically, Section 8 of the By-Laws states in pertinent part: "Conduct unbecoming a member . . . or that which would bring discredit to this Local . . . shall be an offense against the Local, and upon being found guilty thereof after trial, the offending member shall be liable to such penalty as the Local may see fit." Additionally, Article 8, Section 9 of the Constitution states that "Any member of the Local . . . engaging in conduct that is detrimental to the advancement of the purposes which this Union pursues, or as would reflect discredit ability upon the Union . . . shall be subject to . . . penalties" as outlined by the Constitution.  Stated differently, although in order to state a claim under section 411(a)(2) a plaintiff must establish that the speech at issue directly relates to the union-member relationship, *Semancik*, 466 F.2d at 154, it does not necessarily follow that a union can take action on a union member's speech only when it explicitly mentions the union.  Kehoe has provided no authority to the contrary.

Furthermore, Local 21's decision to accelerate the remaining $250 fine due from the Pfeifer matter does not implicate Kehoe's free speech rights because the underlying charges against Kehoe for posting the photographs to Facebook were beyond the purview of section 411(a)(2) of the

LMRDA.

Accordingly, the Court will grant summary judgment in favor of Defendants on causes of action 3 and 11.

     d.   <u>COA 4 & 10: breach of contract in violation of the LMRDA, premised on violation of the Constitution and Bylaws of I.A.T.S.E. and Local 21 (AC ¶¶ 49, 86)</u>

Violation of a union's constitution is actionable under the LMRDA only when the "constitution is being applied in such a way as to deprive the local members of their secured rights." *Martire*, 410 F.2d at 36. "Courts typically defer to a union's interpretation of its own Constitution and will not override that interpretation unless it is 'patently unreasonable.'" *Local 234*, 338 F.3d at 170. Likewise, the Court is mindful of the "soundly based policy of avoiding unnecessary judicial intrusion into the affairs of labor unions." *Local No. 48*, 920 F.2d at 1051 (citations omitted).

The Court concludes that no reasonable jury could conclude that the Local 21 Constitution was applied in such a way to deprive Kehoe of his rights, or that Local 21's interpretation was patently unreasonable. Fatal to Kehoe's claims here is the distinction between acts that are expressly prohibited by the Constitution and those to which the Constitution is silent. In short, the fact that the Constitution may not address a particular action does not mean that that action is prohibited.

First, Mr. Oxfeld's involvement was not in violation because the Constitution and By-Laws do no prohibit the involvement of outside counsel in disciplinary matters. The Constitution and By-Laws are silent as to whether outside counsel such as Mr. Oxfeld are permitted to attend. Significantly, in no way does the Constitution prohibit the presence of outside counsel. As stated by the General Executive Board's denial of Kehoe's appeal, Mr. Oxfeld's attendance at the hearing

"was not improper because he was there to ensure that the trial was held in accordance with the International and Local's Constitution and Bylaws and to ensure that Kehoe's and Pfeifer's due process rights were protected." (JK-43.)

Second, Local 21 did not violate the Constitution by accepting Pfeifer's charges. (Opp. Br. at 21-22.) Even though Mr. Pfeifer's complaint was initially heard orally in violation of Article 12, Section 3, it was ultimately reduced to writing. (JK-17.) And as noted in discussing cause of action 2, there is nothing in the Constitution which prohibits a relaxation of the statute of limitations for bringing charges, especially where the union makes an effort to resolve an issue between members informally. Further, as Kehoe was ultimately found guilty of harassment and conduct unbecoming for posting the pictures to Facebook, the Court agrees that the statute of limitations reset every day the pictures were posted to Facebook, such that the written charges were timely.

Third, the Court finds that Kehoe was provided an opportunity to appeal to the membership. (Opp. Br. at 23.) On April 15, 2013, the findings were read at the general meeting before the body. (P-5; JK-13; P-25.) Forty-five members of Local 21 were present at the meeting, but neither Kehoe nor Mr. Pfeifer were present. (P-5.) After the reading the floor was open to debate by the membership followed by a vote to uphold or decline the findings. (JK-13.) No member debated the findings, and the forty-five present members voted unanimously to uphold the findings of the trial board as to the guilt and penalty for both Kehoe and Mr. Pfeifer. (JK-13; P-5.) Then, when Kehoe stood to appeal the decision of the Executive Board at the May 1, 2013 meeting, a fellow member (Ben Kilmer) made a point of order that Kehoe's chance for an appeal should have been at the last meeting but was not present for that meeting. Accordingly, Mr. Kilmer

36

"made a motion to stop waisting [sic] the Local's time and move on, seconded by Claudio DiZefalo." (P-28 at 2; *see also* JK-12 (noting that Mr. Kilmer's motion "carried unanimously without debate" and that "if it [is] the wish of the membership that this proceed to a higher tribunal so be it").) Thus, the Court finds that Kehoe was given an opportunity to appeal to the membership but that the membership chose not to continue "wasting time" on the matter.

Fourth, the Court finds that Kehoe has not established how refusal to take cognizance of his charges against Mr. Stas is in violation of the Constitution.[14]   (Opp. Br. at 23.)  Although Article 12, Section 3 provides guidelines for filing charges, the rule does not state that the Executive Board *must* accept charges once presented.  Stated differently, there is a distinction between what is necessary and what is sufficient for filing charges, and Kehoe has not demonstrated that Article 12, Section 3 requires the Board to accept all charges.

Accordingly, the Court will grant summary judgment in favor of Defendants for causes of action 4 and 10.

**Complaints 2 and 4**: The May 2013 Pulse Lighting Incident (AC ¶¶ 50-66, 89-97)

As noted, Kehoe was found guilty of conduct unbecoming for removing the keys to his forklift during his lunchbreak and being unresponsive to requests to return them and for operating his forklift in an unsafe manner.  In Complaint 4, Kehoe alleges that the charges filed by Mr. Gutowski stemming from the May 2013 Pulse Lighting incident were "malicious and unsupported" and filed in retaliation for Kehoe speaking out about "safety and other issues" about the job.   (AC ¶¶ 89-97.)  In Complaint 2, Kehoe argues that he was denied evidence and found guilty of the charges despite a lack of evidence.  (*Id.* ¶¶ 50-66.)

---

[14] The Court notes that Complaint 8 more directly relates to the charges against Mr. Stas, but Kehoe did not assert a cause of action for breach of contract in connection with Complaint 8.

a. COA5: generalized violation of Title I of the LMRDA (AC ¶ 68)

For the reasons stated in connection with cause of action 1, the Court finds that Defendants are entitled to summary judgment for the "generalized violation" alleged in cause of action 5 as well.

b. COA 6 & 12: improper disciplinary procedures under 29 U.S.C. § 411(a)(5) (AC ¶¶ 70, 99)

Under 29 U.S.C. § 411(a)(5), a union member may not be disciplined unless he has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing. *Id.* With respect to a "full and fair hearing," the Court looks to traditional notions of due process. *See Falcone*, 420 F.2d at 1165. Although not specifically alleged in the Amended Complaint, the Court construes Kehoe's claim for this cause of action as arising under section 411(a)(5)(C).

First, Kehoe claims that his procedural rights were denied "during the preparation" for the charges stemming from the May 2013 Pulse Lighting work. (*See* AC ¶¶ 50-60; Opp. Br. at 12.) Although the Amended Complaint references multiple emails, Kehoe's opposition brief discusses the request for information concerning lull operators in particular. Kehoe argues that there was a "conflict of interest" because 1) Mr. Seubert forwarded the request to Mr. Oxfeld, and 2) Mr. Oxfeld stated that the request was immaterial to the pending charges. (Opp. Br. at 12; *see* JK-23, JK-24.) Kehoe has not established how this deprived him of his due process rights. There was nothing improper about forwarding the request to Mr. Oxfeld, Local 21's attorney, since by this point Kehoe had already threatened litigation numerous times, and thus it was reasonable that any requests or correspondence from Kehoe would be forwarded to Local 21's attorney. More to the point, Kehoe has not established how refusal to provide him with a list of all lull operators denied

him of due process, since Kehoe was able to cross-examine Harry Kopy, a certified lull operator, and other union members were able to question him as well.  (Nov. 14, 2013 Tr. at 12:5 to 20:15.) Kehoe does not explain how having been provided with a list of all certified lull operators would have resulted in non-duplicative testimony, or changed the result in any way.

Second, Kehoe argues that the trial and finding of guilt denied him of due process, since there was not enough evidence to find him guilty of conduct unbecoming.  (*Id.* ¶¶ 60-66.)  The Court disagrees.

The disciplinary hearing was held on November 4, 2013 before the membership, as requested by Kehoe.  (*See* JK-28.)  At the hearing, Mr. Stas read Mr. Gutowski's charges as follows:

> Between 5/21/13 and 5/24/13 Michael Katz and Joseph Kehoe did bring discredit to Local 21 by disrespecting the client, in this case, Pulse Stage Lighting.  This treatment of the client brought undue hardship upon the Local, which was in the process of securing a collective bargaining agreement with Pulse.
> In addition, while operating the client's forklift, Brother Kehoe and Brother Katz removed the keys and left the area for their lunch break, when requested to return the keys and in not doing so when requested, brought discredit to Local 21.
> Also during the course of the operation of the forklift, Brother Kehoe, who is a certified operator, did operate his lift in an unsafe manner.

(JK-28 at 4:1-14.)  Mr. Gutowksi, in his opening statement, stated that the evidence would show that Kehoe's actions in not returning the keys were "detrimental" to Local 21 in trying to secure a collective bargaining agreement with Local 21.  (*Id.* at 5:13-19.)  In his opening statement, Mr. Gutowski stated that

> [w]ith regards to the operating of the forklift, that was something that I put in [the charges] just so we could discuss that here.  I do not necessarily believe that that is conduct unbecoming a member, if

39

you operate a forklift unsafely, but it does have an adverse effect on the local with respect to the client to which we are sending the people to do a job.

(*Id.* at 5:20 to 6:1.) Kehoe admitted to operating the forklift in an unsafe manner. (*See id.* at 64:19-25.)

Mr. Gutowski presented three witnesses who testified that, after Kehoe and Mr. Katz left for their lunch break with the keys to the forklifts, a request was made over the radio to have the keys returned, and they believed Kehoe to be aware of these requests to return the keys. (*Id.* at 9:19 to 10:12 (Harry Kopy); 21:24 to 22:8 (Brian Connell); 38:24 to 41:9 (Robert Suchochi).) Kehoe maintained that he did not hear the requests to return the keys, as he appropriately did not have his radio with him, and that he only became aware of the requests towards the end of the lunch break, at which point he texted Mr. Gutowksi. (*See id.* 38:24 to 41:9.) Nevertheless, Robert Suchochi of Pulse Lighting testified that the episode made him question whether or not to sign a contract with Local 21 because it put a "sour taste" in his mouth. (*Id.* at 34:1 to 35:16.) Kehoe chose not to present any witnesses in his favor. (*See* JK-28; L21 SMF ¶ 33.)

After closing arguments, Mr. Stas dismissed Mr. Gutowski, Mr. Katz, and Kehoe from the meeting room, at which point the membership discussed the evidence presented off-the-record. (JK-28 at 66.) Ultimately, Kehoe was found guilty of conduct unbecoming, with 41 members voting guilty, 6 voting not guilty, and 2 abstaining. (*Id.* at 67:1-3.) Kehoe was subsequently fined $2,757.18 and suspended from the call list pending payment of the fine. (*See* JK-36.)

The evidence established that Kehoe's admitted unsafe operation of the forklift coupled with his not returning the keys (whether intentional or not) was enough to put the negotiations for a collective bargaining agreement in jeopardy, as testified to by Robert Suchochi. The members

agreed with Mr. Gutowski that this collectively constituted conduct unbecoming, and the Court finds no reason to disturb this finding. Additionally, Kehoe has not provided evidence to show that Mr. Stas or other members of the Executive Board were biased. Kehoe suggests that during the off-the-record discussion of the charges stemming from the May 2013 Pulse Lighting incident, Stas swayed the members to find Kehoe guilty by bringing up unrelated matters, but Kehoe has provided no evidence to substantiate such allegations, and only alluded to hearsay of which he could not recall the details. (*See* Apr. 15 Tr. at 94:5 to 95:18.)[15] Simply put, there is not enough evidence in the record upon which a reasonable jury could conclude that Mr. Stas was biased to the point of violating Kehoe's due process.

Accordingly, the Court finds that Defendants are entitled to summary judgment on causes of action 6 and 12.

c.   COA 7 & 13: breach of contract in violation of the LMRDA (AC ¶¶ 72, 101)

Violation of a union's constitution is actionable under the LMRDA only when the "constitution is being applied in such a way as to deprive the local members of their secured rights." *Martire*, 410 F.2d at 36. "Courts typically defer to a union's interpretation of its own Constitution and will not override that interpretation unless it is 'patently unreasonable.'" *Local 234*, 338 F.3d at 170. Likewise, the Court is mindful of the "soundly based policy of avoiding unnecessary judicial intrusion into the affairs of labor unions." *Local No. 48*, 920 F.2d at 1051 (citations omitted).

---

[15] Additionally, the Court notes that there is no provision in the Constitution which states that deliberation of membership after all of the evidence has been received in a disciplinary hearing must be on the record. Furthermore, Kehoe did not request for the discussions to be held on the record. *Cf. Knight v. Int'l Longshoremen's Ass'n.*, 457 F.3d 331 (3d Cir. 2006) (concluding that union's "refusal to permit [plaintiff] to record his disciplinary hearing violated the due process provision of the LMRDA").

Kehoe does not address how the conduct relating to the May 2013 Pulse Lighting incident gives rise to a breach of contract claim.  Kehoe has failed to tie these particular facts to relevant portions of the Constitution, so the precise basis for this cause of action is unclear.  (Indeed, Kehoe's briefing on the breach of contract claim does not reference the May 2013 Pulse Lighting incident.  (*See* Opp. Br. at 20-24.))  Based on the facts before the Court relating to this complaint, no reasonable jury could conclude that Local 21 violated its Constitution.  Accordingly, the Court finds that Defendants are entitled to summary judgment on these causes of action.

d.   COA 8 & 14: right to free speech under 29 U.S.C. § 411(a)(2) (AC ¶¶ 74, 103)

Under 29 U.S.C. § 411(a)(2), a union member has the right to "express any views, argument, or opinions" subject to the union's "reasonable rules as to the responsibility of every member toward the organization . . . ."  *Id.*  The LMRDA's basic objective—that unions are democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections—is the touchstone for a claim under section 411(a)(2).  *See Lynn*, 488 U.S. at 354 (quotation omitted).  Accordingly, to make out a prima facie case under section 411(a)(2), the speech at issue must "directly relate" to the union-member relationship.  *Semancik*, 466 F.2d at 154.

No reasonable jury could conclude that Kehoe's free speech rights were violated in connection with the May 2013 Pulse Lighting incident because Kehoe has not provided sufficient evidence to support such a claim.  As an initial matter, the Court notes that Kehoe's briefing on his claims under LMRDA's right to free speech centers on the Pfeifer incident and the charges filed by Mr. Stas in October 2013 and does not specifically reference the May 2013 Pulse Lighting Incident.  (*See* Opp. Br. at 6-8.)  Nevertheless, there is no evidence in the record that Kehoe "made

42

complaints about safety and other issues to Stanley Gutowksi" during the Pulse Lighting job, or that Robert Suchochi used them as leverage in the contract negotiations.  The Court notes that Mr. Suchochi testified at the November 4 hearing but testimony about Kehoe's alleged reporting of safety issues was not elicited.  More significantly, Kehoe has not established how his alleged complaints of safety and other issues about the Pulse Lighting job relates to the union-member relationship between him and Local 21.  There is nothing to suggest that such speech was directed towards the LMRDA's basic objective of democratic union governance.  *See Lynn*, 488 U.S. at 354 (quotation omitted).  Accordingly, the Court concludes that Kehoe has failed to establish elements essential to these causes of action, and will therefore grant summary judgment to Defendants.

### Complaint 5: Retaliation and Harassment in Connection with the Previously Listed Complaints (AC ¶¶ 104-05)

In this complaint, Pfeifer realleges the allegations in complaints 1 through 4 and states that while he was "involved in protected and concerted activity," he was "continually and without cause retaliated and harassed . . . in an attempt to curb his freedom of speech and curb his activity, including but not limited to verbal taunts and isolation treatment on job site, unequal job referrals, early cuts on jobs and unequal treatment on the job."  (AC ¶¶ 104-05.)  Kehoe again asserts causes of action for improper disciplinary procedures under 29 U.S.C. § 411(a)(5) (AC ¶ 107) (COA15); breach of contract in violation of the LMRDA (AC ¶ 109) (COA16); and right to free speech under 29 U.S.C. § 411(a)(2) (AC ¶ 111) (COA17).

As noted, *supra*, Kehoe has failed to produce evidence sufficient to make a prima facie claim under the LMRDA for the allegations in complaints 1 through 4.  He likewise fails to produce any evidence to support his claims of harassment.  On a motion for summary judgment, "the non-

moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Colkitt*, 455 F.3d at 201.  The evidence relating to the allegations in complaints 1 through 4—rather, the lack thereof—do not give rise to a free speech claim under 29 U.S.C. § 411(a)(2), because there is no evidence suggesting that Kehoe was prevented from speaking freely on matters concerning the objectives of the LMRDA.  Furthermore, it is not clear to the Court, and Kehoe does not explain, how harassment such as "verbal taunts and isolation treatment" amounts to "improper disciplinary procedure" under 29 U.S.C. § 411(a)(5) or a violation of the Constitution.  Accordingly, the Court will grant summary judgment for Defendants on causes of action 15, 16, and 17.

**Complaint 6**: **Charges Filed by Stas on September 19, 2013 Related to Kehoe's Facebook Activity** (AC ¶¶ 112-13)

On September 19, 2013, Mr. Stas filed charges against Kehoe for comments Kehoe allegedly posted on Facebook.  (P-14.)  Mr. Stas stated that the posts amounted to conduct unbecoming a member on "numerous levels," in that Kehoe had allegedly posted accusations that Mr. Stas is "corrupt with no evidence," that he "lied to the membership in the newsletter," and that he "manipulated the Constitution."  (*Id.*)[16]  The Executive Board took cognizance of the charges on October 28, 2013.  (P-26.)  Via letter dated November 25, 2013, Kehoe advised in part that he would not attend the December 2, 2013 trial on the charges.  (JK-30.)  Ultimately, the charges were not pursued.  (*See* Apr. 15 Tr. at 102:1-9.)

a. COA18: improper disciplinary procedures under 29 U.S.C. § 411(a)(5) (AC ¶ 115)

Under 29 U.S.C. § 411(a)(5), a union member may not be disciplined unless he has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C)

---

[16] The underlying Facebook posts are not in the record before the Court.

afforded a full and fair hearing.  *Id.*  With respect to a "full and fair hearing," the Court looks to traditional notions of due process.  *See Falcone*, 420 F.2d at 1165.

Kehoe cannot establish a prima facie claim under 29 U.S.C. § 411(a)(5)(A) because he was served with written specific charges.  (*See* P-14.)  Furthermore, because these charges were not ultimately pursued, Kehoe cannot establish that he was not given a reasonable time to prepare his defense, *id.* § 411(a)(5)(B), nor can he establish that he was denied a full and fair hearing, *id.* § 411(a)(5)(C).  Kehoe has failed to identify evidence in the record upon which a reasonable jury could find in his favor on this cause of action.

    b.  <u>COA19: breach of contract in violation of the LMRDA (AC ¶ 117)</u>

Kehoe has not established how the above facts give rise to a prima facie case of a breach of contract in violation of the LMRDA.  Kehoe has failed to tie these particular facts to relevant portions of the Constitution, so the precise basis for this cause of action is unclear.  Based on the facts before the Court, and Kehoe's lack of exposition, no reasonable jury could conclude that the constitution is being "applied in such a way as to deprive the local members of their secured rights," *Martire*, 410 F.3d at 36, nor could they conclude that Local 21's interpretation of its Constitution is "patently unreasonable."  *Philadelphia, Local 234*, 338 F.3d at 170.  Accordingly, the Court finds that Defendants are entitled to summary judgment on this cause of action.

    c.  <u>COA20: right to free speech under 29 U.S.C. § 411(a)(2) (AC ¶ 119)</u>

Under 29 U.S.C. § 411(a)(2), a union member has the right to "express any views, argument, or opinions" subject to the union's "reasonable rules as to the responsibility of every member toward the organization . . . ."  *Id.*  The LMRDA's basic objective—that unions are democratically governed, and responsive to the will of the union membership as expressed in open, periodic

elections—is the touchstone for a claim under section 411(a)(2).  *See Lynn*, 488 U.S. at 354 (quotation omitted).  Accordingly, to make out a prima facie case under section 411(a)(2), the speech at issue must "directly relate" to the union-member relationship.  *Semancik*, 466 F.2d at 154.

Although the Court agrees with Kehoe that the speech at issue here theoretically relates to the union-member relationship and the LMRDA's basic objectives, the Court nevertheless will grant summary judgment to Defendants.  First, there is no evidence in the record on which a reasonable jury could conclude that the speech falls under the purview of section 411(a)(2), since Kehoe failed to produce copies of the Facebook posts at issue.  Second, because these charges were never ultimately pursued by Defendants, there is no evidence that Kehoe's free speech rights under section 411(a)(2) were actually chilled.  (*See* Apr. 15 Tr. at 102:1-9.)  Therefore, the Court will grant summary judgment to Defendants on cause of action 20.

### <u>Complaint 7</u>: Failure to Disclose Under the LMRDA (AC ¶¶ 120-21)

Kehoe alleges that Local 21 "and/or its representatives have refused to acknowledge, or adhere to the provisions and rights protected by the LMRDA" and that "Local 21 does not and has not informed its members of the rights which are protected under the LMRDA and which disclosure is required by law, despite being made aware of its existence." (AC ¶¶ 120, 121.) Kehoe again asserts causes of action for improper disciplinary procedures under 29 U.S.C. § 411(a)(5) (AC ¶ 123) (COA21); breach of contract in violation of the LMRDA (AC ¶ 125) (COA22); and right to free speech under 29 U.S.C. § 411(a)(2) (AC ¶ 127) (COA23).

Even if under the LMRDA Local 21 is required to provide copies of collective bargaining agreements to its members, 29 U.S.C. § 414, and inform its members about Title I of the LMRDA,

*id.* § 415, Kehoe has not identified specific evidence in the record to support a breach of contract claim in violation of the LMRDA in connection with the above-stated facts. Furthermore, it is unclear to the Court how section 411(a)(5) or section 411(a)(2) applies to the above-stated facts. In any event, Kehoe has failed to identify evidence upon which a reasonable jury could rule in his favor on these causes of action.

### <u>Complaint 8</u>: Refusal to Take Cognizance of Kehoe's October 2013 Charges Against Stas (AC ¶¶ 128-31)

On October 27, 2013, Kehoe filed charges against Mr. Stas for conduct unbecoming a member and for bringing discredit upon the union. (P-15.) Kehoe alleged that Mr. Stas "has refused to his job as President" by "refus[ing] to provide my requests for certain evidence . . . regarding the [Pulse Lighting] charges . . . , instead sending the request to go to our attorney where the evidence was illegally denied." (*Id.*) Kehoe also objected to Mr. Oxfeld's involvement in the disciplinary hearing, again arguing that Mr. Oxfeld has "no authority or business" being involved. (*Id.*) Additionally, Kehoe objected to the imposition of the renewed $250 fine stemming from the Pfeifer matter, arguing that it was invalid because it was not imposed via "proper charges" or evidence. (*Id.*) The Executive Board declined to take cognizance of the charges. (P-27.)

a. <u>COA24: improper disciplinary procedures under 29 U.S.C. § 411(a)(5) (AC ¶ 133)</u>

Under 29 U.S.C. § 411(a)(5), a union member may not be disciplined unless he has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing. *Id.* With respect to a "full and fair hearing," the Court looks to traditional notions of due process. *See Falcone*, 420 F.2d at 1165.

It is unclear to the Court how section 411(a)(5) applies to the above-stated facts. In any event, Kehoe has failed to identify evidence upon which a reasonable jury could rule in his favor

on this cause of action.  Accordingly, the Court finds that Defendants are entitled to summary judgment on cause of action 24.

   b.   COA25: right to free speech under 29 U.S.C. § 411(a)(2) (AC ¶ 135)

Under 29 U.S.C. § 411(a)(2), a union member has the right to "express any views, argument, or opinions" subject to the union's "reasonable rules as to the responsibility of every member toward the organization . . . ."  *Id.*  The LMRDA's basic objective—that unions are democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections—is the touchstone for a claim under section 411(a)(2).  *See Lynn*, 488 U.S. at 354 (quotation omitted).  Accordingly, to make out a prima facie case under section 411(a)(2), the speech at issue must "directly relate" to the union-member relationship.  *Semancik*, 466 F.2d at 154.

It is unclear to the Court how section 411(a)(2) applies to the above-stated facts.  Although the Executive Board failed to take cognizance of the charges filed by Kehoe, it does not follow that his speech rights related to the democratic objectives of the LMRDA were chilled.  In any event, Kehoe has failed to identify evidence upon which a reasonable jury could rule in his favor on this cause of action.  Accordingly, the Court finds that Defendants are entitled to summary judgment on cause of action 25.

In sum, the Court finds that Defendants are entitled to summary judgment on all counts due to Kehoe's failure to establish a prima facie case under the LMRDA for any of the allegations in question.  As such, the Court declines to discuss Defendants' arguments relating to collateral estoppel (L21 Mov. Br. at 47) or damages (*id.* at 56).

## <u>CONCLUSION</u>

For the reasons above, the Court grants Defendants' Motions for Summary Judgment.  An appropriate Order accompanies this Opinion.


DATED: May 20, 2016                                  s/ Jose. L. Linares
                                                     JOSE L. LINARES
                                                     UNITED STATES DISTRICT JUDGE